David L. Cheng, Bar No. 240926
dcheng@fordharrison.com
**FORD & HARRISON LLP**
350 South Grand Avenue, Suite 2300
Los Angeles, CA 90071
Telephone: (213) 237-2400
Facsimile: (213) 237-2401

Daniel R. Lyman, Bar No. 319010
dlyman@fordharrison.com
**FORD & HARRISON LLP**
1901 Harrison Street, Suite 1650
Oakland, CA 94612
Telephone: (415) 852-6914

Attorneys for Defendants
THE YERBA MATE CO., LLC and GUAYAKI SUSTAINABLE RAINFOREST PRODUCTS, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

CASEY TROYER, as individuals and on behalf of all similarly situated employees,

Plaintiff,

v.

THE YERBA MATE CO., LLC, a limited liability company; GUAYAKI SUSTAINABLE RAINFOREST PRODUCTS, INC.; and DOES 1 through 50, inclusive,

Defendants.

Case No.

**CLASS ACTION**

**NOTICE OF REMOVAL OF ACTION BY DEFENDANT THE YERBA MATE CO., LLC PURSUANT TO 28 U.S.C. §§ 1332, 1367(a), 1441(a), 1441(b), 1446 AND 1453**

Action Filed: July 23, 2020

Date of Removal: August 28, 2020

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that defendant The Yerba Mate Co., LLC ("Yerba Mate" or "Defendant") hereby removes the above-entitled action from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California pursuant to 1332(d) (Diversity under Class Action Fairness Act), 1367(a) (Supplemental Jurisdiction), 1441(a), 1441(b), 1446 and 1453, based on the following facts:

## I. PLEADINGS AND PROCESS, AND ORDERS

1. Plaintiff Casey Troyer ("Plaintiff") commenced a civil action in the Superior Court of the State of California for the County of Alameda by filing a Complaint for Damages on July 21, 2020 entitled "Casey Troyer, as individuals and on behalf of all similarly situated employees, Plaintiff v. The Yerba Mate Co., LLC, a limited liability company; Guayaki Sustainable Rainforest Products, Inc.; and Does 1 through 50, inclusive, Defendants," Case No. RG20068307 ("Complaint"). True and correct copies of the Complaint and Summons on the Complaint are attached as **Exhibit A** to the Declaration of Daniel R. Lyman, ¶ 2 ("Lyman Decl.").

2. On July 23, 2020, Plaintiff filed a First Amended Complaint ("FAC" or "First Amended Complaint").

3. On July 29, 2020 Plaintiff served Yerba Mate with a copy of the First Amended Complaint, Summons on First Amended Complaint, Civil Case Cover Sheet, and Superior Court of California County of Alameda Alternative Dispute Resolution Information Packet. True and correct copies of these documents are attached as **Exhibit B** to the Declaration of Daniel R. Lyman, ¶ 3 ("Lyman Decl.").

4. On August 25, 2020, Plaintiff served, by Notice and Acknowledgement of Receipt, defendant Guayaki Sustainable Rainforest Products, Inc. ("Guyaki") (Guayaki and Yerba Mate referred to collectively as "Defendants") with a copy of the First Amended Complaint, Summons on First Amended Complaint, Civil Case Cover Sheet, and Superior Court of California County of Alameda Alternative Dispute Resolution Information Packet. True and correct copies of the executed Notice and Acknowledgment of Receipt is attached as **Exhibit C** to the Declaration of

Daniel R. Lyman, ¶ 4 ("Lyman Decl.").

5. In the FAC, Plaintiff alleges, as an individual and on behalf of all similarly situated employees, that Defendants (1) failed to provide meal and rest breaks or, in the alternative, meal and rest break premium pay (FAC, ¶¶ 26-31, Ex. B to Lyman Decl., ¶ 3); (2) failed to pay all overtime and minimum wages (*Id.* at ¶¶ 32-36.); (3) failed to provide accurate wage statements (*Id.* at ¶¶ 37-39.); (4) engaged in unfair and unlawful business practices (*Id.* at ¶¶ 40-45.); and (5) invaded employees' privacy (*Id.* at ¶¶ 46-53.).

6. On August 17, 2020, Defendants were served Plaintiff's Notice of Hearings, which included, as Exhibit A, a Notice of Hearing issued on July 31, 2020 setting a Copmlex Determination Hearing on September 8, 2020 and a Case Management Conference on October 13, 2020. A true and correct copy of Plaintiff's Notice of Hearings, and the attachments thereto, is attached as **Exhibit D** to the Declaration of Daniel R. Lyman, ¶ 5.

7. A true and correct copy of Proof Of Service as to Yerba Mate, dated and filed with the state court on July 30 2020, is attached as **Exhibit E** to the Declaration of Daniel R. Lyman, ¶ 6.

8. Pursuant to 28 U.S.C. § 1446(d), the foregoing exhibits constitute all process, pleadings and orders served on, received by Defendant or filed in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Superior Court of California, Alameda County or served by any party.

## II. TIMELINESS OF REMOVAL

9. This Notice of Removal is timely filed in accordance with 28 U.S.C. § 1446(b), in that it is filed within thirty (30) days after July 29, 2020, the first and only date on which Yerba Mate was provided with any pleading or other paper in this matter, and this case has been on file for less than one year. *See Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). The 30-day period for removal runs from the date of service of the summons and complaint, as governed by state law. *See Ibid.* Here, the last day for removal falls on August 28, 2020, accounting for weekends and holidays. *See* 28 U.S.C. § 1446(b); Fed. R. Civ. Proc. 6(a); *Krug v. Wells Fargo Bank, N.A.*, No. C 11-5190, 2011 WL 6182341, *1 (N.D. Cal. Dec. 13,

2011). Accordingly, this Notice of Removal has been timely filed within the time provided by 28 U.S.C. § 1446(b).

10. All non-removing defendants, including Guayaki, have consented to the removal of the action.

## III. VENUE

11. The United States District Court for the Northern District of California is the proper venue for removal pursuant to 28 U.S.C. § 1441(a) because the action is pending in the Superior Court of the State of California for the County of Alameda, which is located within the Northern District of California. 28 U.S.C. § 84(a).

## IV. INTRA-DISTRICT ASSIGNMENT

12. Pursuant to Northern District Local Rules, 3-2(c) & (d) and 3-5(b), civil actions arising in the County of Alameda shall be assigned to the San Francisco or Oakland Division. Therefore, intra-district venue properly lies in the San Francisco or Oakland Division.

## V. JURISDICTION PURSUANT TO THE CLASS ACTION FAIRNESSACT

13. This Court has original jurisdiction over this case pursuant to the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d). CAFA provides the federal district courts with original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5 million exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

14. Here, removal is proper under CAFA because, as set forth below, the case is filed as a civil class action, the amount in controversy allegedly exceeds $5 million exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant.

15. The exceptions set forth in 28 U.S.C. § 1332(d)(3)-(5) are not applicable here in that the primary defendant in the matter is Defendant, who is a citizen of the States of Delaware and Florida, and defendant Guayaki is **not** a defendant from whom members of the plaintiff class are seeking significant relief, or whose alleged conduct forms a significant basis for the claims being asserted by the Proposed Class. Specifically, during the time period between April 6, 2016

to the present (hereinafter, the "Relevant Time Period"), Defendant Yerba Mate employed approximately 262 potential class members in California. While defendant Guayaki, on the other hand, employed only approximately 4 potential class members and only between April 6, 2016 and August 7, 2016. On August 7, 2016, Defendant Yerba Mate began operations and from that time through the present Defendant Yerba Mate has employed all potential class members. Accordingly, since defendant Guayaki could only be conceivably liable for an approximately 4-month time period and only for a very small workforce, the relief that Plaintiff and potential class members could recover against defendant Guayaki is at most 0.11 percent of the potential recovery Plaintiff could obtain against the defendants *in toto*. ([4 months ÷ 52 months in Relevant Time Period] x [4 potential class members employed by defendant Guayaki at time of acquisition ÷ 262 potential class members employed by Defendant] = **0.11%**)

16. This action was initially brought pursuant to California Code of Civil Procedure § 382 on behalf of a putative class of non-exempt employees of Defendants who worked in California from April 6, 2016 to the present. (FAC, ¶ 14 Ex. B to Lyman Decl., ¶ 3) The size of the class is not specified and/or is unknown to Plaintiff. However, Plaintiff claims the putative class is so numerous that the individual joinder of all members is impracticable. (*Id.* at ¶ 15.)

**A. Citizenship of Parties**

17. Pursuant to 28 U.S.C. § 1453(b), "A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." CAFA's diversity requirement is satisfied when any member of a class of citizens is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2).

18. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088 (9th Cir. 1983). A person's domicile is the place he or she resides with the intention to remain, or to which he or she intends to return. *Kanter v. Warner-Labert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

19. Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986).

20. Here, Plaintiff alleges, and Defendant is informed and believes, that Plaintiff is a citizen and residents of the State of California. (FAC, ¶ 9 Ex. B to Lyman Decl., ¶ 3) Accordingly, Plaintiff is a citizen of the State of California for diversity purposes. *Kanter*, 265 F.3d at 857.

21. For purposes of CAFA, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); see also, *Johnson v. Columbia Prop. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

22. Defendant Yerba Mate is a corporation that is organized and exists under the laws of the State of Delaware, with its principal place of business in the State of Florida. Accordingly, Yerba Mate is a citizen of Delaware and Florida for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

23. Defendant Guayaki is a corporation that is organized and exists under the laws of the State of California, with its principal place of business in the State of California. Accordingly, Guayaki is a citizen of California for purposes of diversity jurisdiction. 28 U.S.C. § 1332(c)(1).

24. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

25. Here, diversity of citizenship is met because Plaintiff is a citizen of California while Defendant Yerba Mate is a citizen of Delaware and Florida. Therefore, the minimal diversity requirement is fully satisfied. See, 28 U.S.C. § 1332(d)(2)(A).

**B. The Amount in Controversy Exceeds $5 Million and Plaintiff's Classes are More than 100 Class Members**

26. CAFA requires the "matter in controversy" to exceed "the sum or value of

$5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2). "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" this amount. 28 U.S.C. § 1332(d)(6). Further, CAFA may only be invoked if the proposed class contains at least 100 members. 28 U.S.C. § 1332(d).

27. "In determining the amount in controversy, courts first look to the complaint. Generally, 'the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Ibarra v. Manheim Investments, Inc.* (9th Cir. 2015) 775 F.3d 1193, 1197 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibid.*

28. Plaintiffs have not alleged a specific amount in controversy in their Complaint. A "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*¸ 574 U.S. 81, 89 (2014). If the plaintiff or the court contests a defendant's allegations, however, "[e]vidence establishing the amount is required." (*Id.*) As noted in *Dart Cherokee*: "'[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met. Discovery may be taken with regard to that question. In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.'" *Id.* (quoting House Judiciary Committee Report on the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. Rep. No. 112-10, p. 16 (2011).

29. Here, Defendant can plausibly allege, based on Plaintiff's Complaint and his prayer for relief, that the amount in controversy for Plaintiff's class-wide claims exceeds $5 million. The assertions of Defendant herein are limited to their preliminary understanding of Plaintiff's claims and data currently available to Defendant.

30. Here, Plaintiff proposes "a class consisting of all non-exempt employees of Defendant who worked in California during the period from April 6, 2016 to the present."

("Proposed Class"). (FAC, ¶ 14 Ex. B to Lyman Decl., ¶ 3.) Plaintiff and the Proposed Class of "non-exempt" employees are in fact classified as exempt by Defendant. Plaintiff's theory underpinning his wage and hour allegations are that he and the Proposed Class are improperly classified as exempt. During the Relevant Time Period, based on Defendant's records, Defendant employed approximately 262 members of the Proposed Class ("Proposed Class Members"). Further, based on personnel and payroll records of Proposed Class Members, the average hourly rate of pay was $17.30,[1] and, as of the date of the removal, the total number of workweeks worked by Proposed Class Members was approximately 11,693.

31. While Defendant denies Plaintiff's claims of wrongdoing and denies his request for relief thereon, the facial allegations in Plaintiff's Complaint and the total amount of penalties and attorneys' fees at issue in this action, when viewed in the light most favorable to Plaintiff, is in excess of the jurisdictional minimum. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). "When a '[d]efendant's calculations (are) relatively conservative, made in good faith, and based on evidence whenever possible,' the court may find that the '[d]efendant has established by a preponderance of the evidence that the amount in controversy is met.'" *Cagle v. C&S Wholesale Grocers, Inc.*, __ F.R.D. ___, 2014 WL 651923, *7 (E.D. Cal. Feb. 19, 2014) (quoting *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (citations omitted)). Nor does Defendant need to provide summary judgment-type evidence. *Cagle*, 2014 WL 651923, *7.

32. Where a plaintiff alleges that a defendant has "'engaged in a uniform policy/practice of wage abuse' against their employees, and that '<u>[a]t all material times</u>' [defendant] failed to provide . . . rest breaks to [p]laintiff and the other class members," it is

---

[1] As Plaintiff and Proposed Class Members are exempt and compensated at an annual rate, for the purposes of this Notice of Removal, this hourly rate was calculated by dividing the Proposed Class Members' annual rates into 40 hour work weeks. *See* Cal. Lab. Code § 515(c).

"reasonable" to "assum[e] that each class member missed . . . one rest period per week." *Byrd v. Masonite Corp.*, No. CV 16-35-JGB KKx, 2016 U.S. Dist. LEXIS 60078, at *16 (C.D. Cal. May 5, 2016) (emphasis added) (citing *Arreola v. Finish Line*, No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *4 [N.D. Cal. Dec. 9, 2014][finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation once per week."]). Even further, where a plaintiff alleges that a defendant "'adopted and maintained uniform policies, practices and procedures' that caused the purported violations of California's [break laws] … [i]t is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied." *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890-GHK JCx, 2015 WL 2452755, *4 (C.D. Cal. May 21, 2015) (emphasis added). In that instance, the Court found that "a 100% violation rate is not an unreasonable assumption to use in estimating the amount in controversy in light of the allegations in the complaint." *Id.* Further, where the underlying claim is one of misclassification, it is reasonable to assume a 100% violation rate. *See Vitale v. Celadon Trucking Servs.*, No. CV15-5193 PSG (GJSx) 2015 WL 5824721, *7 (C.D. Cal. Oct. 2, 2015) ("Defendant is correct that it may reasonably assume that 100% of the putative class members are theoretically entitled to penalties for misclassification."); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (Defendant was permitted to assume that each class member was misclassified as an independent contractor, rather than an employee for purposes of calculating amount in controversy under CAFA).

33. Here, Plaintiff alleges five causes of action: (1) failure to provide meal and rest breaks or, in the alternative, meal and rest break premium pay; (2) failure to pay all overtime and minimum wages; (3) failure to provide accurate wage statements; (4) engaging in unfair and unlawful business practices; and (5) invading employees' privacy. (*See generally,* FAC, Ex. B to Lyman Decl., ¶ 3.) Plaintiffs seek unpaid wages, interest, penalties, restitution, statutory damages, as well as attorneys' fees and costs. Plaintiffs seek recovery of the aforementioned remedies for all members of the Proposed Class. (*See, e.g., id.* at Prayer for Relief, ¶¶ 1-9, Ex. B to Lyman Decl., ¶ 3.)

34. Specifically, through his Complaint, Plaintiff alleges that "[a]s a pattern and practice, Defendants regularly did not provide employees with their meal periods and rest breaks and did not provide proper compensation for this failure." (FAC, at ¶ 28, Ex. B to Lyman Decl., ¶ 3 [emphasis added].) Plaintiff alleges Defendant's "pattern, practice and administration of corporate policy as described [in the FAC] is unlawful and creates an entitlement to recovery by Plaintiff and the Class . . . for the balance of unpaid premium compensation pursuant to Labor Code 226.7 and the applicable IWC Wage Order, including interest thereon." (FAC, at ¶ 31, Ex. B to Lyman Decl., ¶ 3 [emphasis added].) Consequently, Plaintiff is alleging, as a matter of policy and practice, that Defendants uniformly and systematically do not provide Plaintiff and Proposed Class Members with lawful meal and rest breaks. Indeed, as Defendants need not comply with meal and rest break requirements for exempt employees (*See* Cal. Lab. Code § 226.7(e)), and Plaintiff's claims are therefore based on the contention that he and Proposed Class Members are improperly classified as exempt, it is reasonable to assume for these purposes that violations occurred every shift for every alleged misclassified Proposed Class Member.

35. Therefore, assuming *arguendo* that Proposed Class Members were not properly classified as exempt and therefore not provided compliant meal or rest breaks every shift, then based on the Proposed Class Members' average rate of pay, there is a potential estimate of at least **$2,082,083.10** in damages.[2]

36. Plaintiff also claims that "[a]s a pattern and practice, Defendants regularly failed to

[2] As exempt employees, Plaintiff and Proposed Class Members are compensated for a 40 hour work week (*See* Cal. Lab. Code § 515(c)), which, assuming, *arguendo*, that Plaintiff and Proposed Class Members are entitled to meal and rest periods, would require Defendants to provide two hours of compensation at the employees' regular rate of pay as premium pay for Defendant's failure to provide meal or rest periods. Cal. Labor Code § 226.7; Cal. Code Regs., tit. 8, § 11090, subds. 11(A) & 12(B) (entitling employees to at least one rest break if they worked a period of at least 3.5 hours and at least one meal break if they worked a period over 5 hours); s*ee United Parcel Service Wage & Hour Cases*, 196 Cal. App. 4th 57, 70 ("[E]mployees . . . may recover up to two additional hours of pay on a single work day for meal period and rest period violations—one for failure to provide a meal period and another for failure to provide a rest period."). This potential damages estimate is based on providing each employee two hours of premium pay based on their regular rate of compensation for each day worked.

compensate its employees for all hours work, resulting in a failure to pay all minimum wages and, where applicable, overtime wages." (FAC, at ¶ 34, Ex. B to Lyman Decl., ¶ 3.) The FAC is devoid of specific facts suggesting the amount of claimed unpaid overtime the Proposed Class Members are allegedly entitled to. However, a reasonable estimate for purposes of evaluating Plaintiff's claims would be to assume between 1 and 5 hours of unpaid overtime per employee per week. Based on each employees' average overtime rates, the potential estimate for unpaid overtime is in the range of at least $312,312.46 (assuming 1 hour per employee per week), $936,937.39 (assuming 3 hours per employee per week), or $1,561,562.32 (assuming 5 hours per employee per week). For purposes of estimating the amount in controversy, Defendant will assume the middle amount of **$936,937.39** based on a reasonable assumption that Plaintiff is alleging 3 hours of unpaid overtime per employee per week. This is a more than reasonable assumption given Plaintiff's allegations that Defendant employed a "pattern, practice, and administration of corporate policy" of not compensating Proposed Class Members for overtime. (FAC, at ¶ 36, Ex. B to Lyman Decl., ¶ 3.)

37. Plaintiffs also claims that Proposed Class Members are entitled to penalties as a result of Defendant's furnishing inaccurate wage statements in violation of Labor Code section 226. (FAC, at ¶¶ 37-39, Ex. B to Lyman Decl., ¶ 3.) Specifically, Plaintiff alleges that "Defendants failed to keep accurate records of Plaintiff and the Class and Subclasses (d), (e), and (f)'s gross wages earned, total hours worked, net wages earned, and all applicable hourly rates and the number of hours worked at each hourly rate." (FAC, at ¶ 38, Ex. B to Lyman Decl., ¶ 3.) Plaintiff further alleges that Defendants' "<u>pattern, practice and uniform administration of corporate policy</u> as described herein is unlawful and creates an entitlement to recovery . . . for all damages and/or penalties pursuant to Labor Code § 226." (FAC, at ¶ 39, Ex. B to Lyman Decl., ¶ 3.)

38. Labor Code section 226(e)(1) provides for a penalty for each inaccurate wage statement issued to each employee of up to $4,000 within the one-year statute of limitations. Assuming *arguendo* the truth of Plaintiff's allegation that Proposed Class Members are entitled to inaccurate wage statement penalties, based on the number of wage statements issued to each

Proposed Class Member during the relevant time period, when each Proposed Class Members' statutory penalties are calculated, Plaintiffs' claim for inaccurate wage statement penalties, in the aggregate, is estimated to be at least **$527,950.00**.

39. Plaintiff further claims that Defendant violated California Penal Code § 632 by "employ[ing] certain surveillance and recording equipment at the workplace without the knowledge or consent of employees . . . to listen in on and record employee conversations, including those confidential in nature." (FAC, at ¶¶ 49-50, Ex. B to Lyman Decl., ¶ 3.) Plaintiff further alleges that Defendants "did intrude on Plaintiff and the members of the Class' privacy by knowingly and/or negligently and/or intentionally engaging in the aforementioned recording/eavesdropping activities." (FAC, at ¶ 51, Ex. B to Lyman Decl., ¶ 3.) Violation of California Penal Code § 632 carries statutory damages of the greater between $5,000 per violation or three times the actual amount of damages, if any, sustained by the Plaintiff. Cal. Pen. Code § 637.2. Assuming even just a single violation of each Proposed Class Member that Plaintiff purports to represent during the one year statute of limitations on this claim, and assuming the minimum damages amount of $5,000 per violation, the minimal potential damages on this claim is **$985,000.00** (approximately 197 Proposed Class Members were employed during the statute of limitations period). *See Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 880 ("The statute of limitations in which to commence an action for invasion of privacy is one year.")

40. Based on the above, the total amount in controversy exclusive of attorneys' fees and interest is estimated to be at least **$4,531,970.49** ($2,082,083.10 [meal and rest breaks] + $936,937.39 [unpaid wages/overtime] + $527,950.00 [inaccurate wage statements] + $985,000.00 [invasion of privacy]).

41. Plaintiff also seeks an award of reasonable attorneys' fees and costs for the Proposed Class Members, including pursuant to the California Labor Code sections 218.6, 226, and 1194, and California Code of Civil Procedure § 1021.5. (*See* Prayer for Relief, Paragraph 9, Ex. B to Lyman Decl.) It is well-settled that when authorized by statute, attorneys' fees are to be included in the calculation of the amount of Plaintiff's claims for purposes of determining whether the requisite jurisdictional minimum is met. *See Galt G/S v. JSS Scandinavia*, 142 F.3d

1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (in deciding amount in controversy issue, court may estimate the amount of reasonable attorneys' fees likely to be recovered by plaintiff if she were to prevail). While Plaintiff's attorneys' fees cannot be precisely calculated, it is reasonable to assume that they could exceed a damages award. *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (C.D. Cal. 2002).

Additionally, courts in this circuit have held that it is not uncommon for an attorneys' fees award to be 25% of the recovery. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Cortez v. United Natural Foods, Inc.*, 2019 U.S. Dist. LEXIS 31540, *23-24 (N.D. Cal. Feb. 27, 2019).

Particularly in the context of a CAFA removal, courts add 25% of the projected recovery as the amount of fees in controversy. *See Fong v. Regis Corp.*, 2014 U.S. Dist. LEXIS 275, *23 (N.D. Cal. Jan. 2, 2014) ("Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages."); *Altamirano v. Shaw Indus.*, 2013 U.S. Dist. LEXIS 84236, *35 (N.D. Cal. Jun. 14, 2013) (denying motion to remand because "the amount in controversy on the five causes of actions totals $4,354,326.48, [and] adding attorneys fees yields a total amount in controversy of $5,442,908.10"); *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1337-38 (E.D. Cal. 2015) (motion to remand denied because "[a]ssuming that plaintiff correctly estimates the statutory damages available under section 226(e) as $4,064,800, an attorney award of $935,200—or approximately 23 percent of estimated recovery--would suffice to push this case over CAFA's $5 million requirement"); *Rodriguez v. CleanSource, Inc.*, 2014 U.S. Dist. LEXIS 106901, *13-14 (denying motion to remand because "25% of $4,274,189.42, $1,068,547.36, which, when added to the previous figure, produces a total amount in controversy of $5,342,736.78. This exceeds the jurisdictional threshold for CAFA."); *Herrera v. Carmax Auto Superstores Cal., LLC*, 2014 U.S. Dist. LEXIS 188729, *12-13 (C.D. Cal. Jun. 12, 2014) (denying motion to

remand because "Defendant has established that the amount in controversy in Plaintiffs' attorneys' fees claim is 25 percent of the amount in controversy in the above claims"); *Gutierrez v. Stericycle, Inc.*, 2017 U.S. Dist. LEXIS 20975, *51-52 (C.D. Cal. Feb. 14, 2017) (amount in controversy exceeds $5 million for purposes of CAFA because "it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims"); *Garcia v. Wal-Mart Stores*, 2016 U.S. Dist. LEXIS 142807, *18 (C.D. Cal. Oct. 14, 2016) (motion to remand denied because "Defendant can establish by a preponderance of the evidence that the overtime penalties are at least $4 million dollars [and] the addition of twenty-five percent in attorneys' fees would necessarily meet the $5 million amount in controversy requirement under CAFA."); *Salcido v. Evolution Fresh, Inc.*, 2016 U.S. Dist. LEXIS 1375, *23 (C.D. Cal. Jan. 6, 2016) (fees added to amount in controversy and remand motion denied; "[t]he Court finds, consistent with its previous rulings on the issue, that a 25 percent multiplier [to calculate fees] is appropriate"); *Johnson v. Sunrise Senior Living Mgmt.*, 2016 U.S. Dist. LEXIS 29631, *17 (C.D. Cal. Mar. 8, 2016) ("If Defendant can establish by a preponderance of the evidence that the waiting time penalties are at least $4 million dollars, the addition of twenty-five percent in attorneys' fees would necessarily meet the $5 million amount in controversy requirement under CAFA."); *Lopez v. Aerotek, Inc.*, 2015 U.S. Dist. LEXIS 63615, *8-9 (C.D. Cal. May 14, 2015) (approving of calculation of "amount in controversy before attorneys' fees [to be] $4,887,718.00, resulting in a 25 percent attorneys' fee of $1,221,929.50, and reaching a total amount in controversy of $6,109,647.50"); *Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. 2015) ("the Court concludes that defendants' estimate of an additional 25 percent of the mileage reimbursement value is reasonable" to add as the value of the attorneys' fees demand for purposes of calculating the amount in controversy for a CAFA removal); *Stafford v. Dollar Tree Stores, Inc.*, 2014 U.S. Dist. LEXIS 42564, *24 (E.D. Cal. Mar. 27, 2014) ("the amount in controversy includes attorneys' fees, and a common estimate for the attorneys' fees award is 25 percent of the recoverable damages").

42. Considering the sum of the potential damages from above, estimated to be at least $4,531,970.49, it is reasonable to assume *arguendo* that the potential attorneys' fees would be

**$1,132,992.62** ($4,531,970.49 x 25%).

43. Defendant does not concede Plaintiff's claims have any merit, however, when the relief sought on behalf of the Proposed Class Members is taken as a whole, the amount in controversy for Plaintiff's class claims likely exceed the $5 million jurisdiction requirement, exclusive of interest and costs ($4,531,970.49 + $1,132,992.62 = **$5,664,963.11**). Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(d)(2) and 1441(a). *See* 28 U.S.C. § 1332(d)(6) ("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs.") Accordingly, the potential amount in controversy is in excess of the $5 million threshold for CAFA jurisdiction.

44. Finally, CAFA's numerosity requirement of the proposed class having at least 100 class members is satisfied by the 262 Proposed Class Members identified in Paragraph 29 above. *See* 28 U.S.C. § 1332(d)(5)(B).

## VI. NOTICE OF REMOVAL

45. A copy of this notice of removal will be filed with the Clerk of the Superior Court of the State of California, County of Alameda.

46. By removing the action to this Court, Defendant does not waive any defenses, objections, or motions available to it under state or federal law. Defendant expressly reserves the right to require that the claims of Plaintiff and/or all members of the putative class be decided on an individual basis.

//

//

//

//

//

//

//

47. WHEREFORE, Defendant prays that the Court remove this civil action from the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

Dated: August 28, 2020

**FORD & HARRISON LLP**

By: /s/ *Daniel R. Lyman*
David L. Cheng
Dan R. Lyman
Attorneys for Defendants
THE YERBA MATE CO., LLC and GUAYAKI SUSTAINABLE RAINFOREST PRODUCTS, INC.

**PROOF OF SERVICE – ELECTRONIC TRANSMISSION**

STATE OF CALIFORNIA/COUNTY OF ALAMEDA

I am a citizen of the United States and an employee in the County of Alameda. I am over the age of eighteen (18) years and not a party to the within action. My business address is FORD & HARRISON LLP, 1901 Harrison Street, Suite 1650, Oakland, California 94612.

On August 28, 2020, I electronically served the document(s) via United States District Court – Northern District of California ECF webite, described below, on the recipients designated on the Transaction Receipt located on the United States District Court – Northern District of California ECF website.

**NOTICE OF REMOVAL OF ACTION BY DEFENDANT THE YERBA MATE CO., LLC PURSUANT TO 28 U.S.C. §§ 1332, 1367(a), 1441(a), 1441(b), 1446 AND 1453**

On the following parties:

PLEASE SEE SERVICE LIST PROVIDED BY USDC –NORTHERN DISTRICT OF CALIFORNIA ECF WEBSITE

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on August 28, 2020, at Oakland, California.

*/s/ Bridgette C. Burdick*
BRIDGETTE C. BURDICK