KENNETH H. YOON (State Bar No. 198443)
STEPHANIE E. YASUDA (State Bar No. 265480)
**YOON LAW, APC**
One Wilshire Blvd., Suite 2200
Los Angeles, California 90017
Telephone: (213) 612-0988
Facsimile: (213) 947-1211

MARK L. WEBB (State Bar No. 67959)
**LAW OFFICE OF MARK L. WEBB**
994 Clayton, No. 2
San Francisco, California 94117
Telephone: (415) 515-0960

Attorneys for Plaintiff Casey Troyer

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY TROYER, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE YERBA MATE CO., LLC, a limited liability company; GUAYAKI SUSTAINABLE RAINFOREST PRODUCTS, INC., a corporation,<br><br>Defendants. | Case No.: 3:20-cv-06065-WHA<br><br>[Assigned for all purposes to Hon. William H. Alsup; Courtroom 12]<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     December 16, 2021<br>Time:     8:00 a.m.<br>Place:    Courtroom 12 |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 16, 2021, at 8:00 a.m. or as soon thereafter as this matter may be heard in Courtroom 12 of the San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Casey Troyer ("Plaintiff") will, and hereby does, move this Court for an order (1) preliminarily approving the proposed class action settlement; (2) authorizing the mailing of the proposed class action notice; and (3) scheduling a Final Approval and Fairness Hearing.

This motion is made on the grounds that the proposed settlement is a fair and reasonable compromise of the disputed claims in this action, and it satisfies all criteria for preliminary approval of a class action settlement. The motion is based upon this notice, the attached memorandum of points and authorities, the declarations filed concurrently herewith, and all papers and records on file herein.

Dated: November 8, 2021          YOON LAW, APC


_____ */s/ Kenneth H. Yoon*_____
Kenneth H. Yoon
Attorneys for Plaintiff Casey Troyer

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................... 1

II.     SUMMARY OF THE LITIGATION........................................... 1

        A.      Pleadings ............................................................................ 1

        B.      Discovery and Investigation............................................. 2

        C.      Settlement .......................................................................... 3

III.    SUMMARY OF SETTLEMENT.................................................. 3

IV.     PRELIMINARY APPROVAL OF THIS SETTLEMENT
        IS APPROPRIATE........................................................................ 4

        A.      Legal Standard.................................................................. 4

        B.      The Settlement Meets the Standards for Preliminary Approval ......... 6

                1.      Arms'-Length Negotiations ................................. 6

                2.      Sufficient Investigation and Discovery.................... 6

                3.      Class Counsel's Wage and Hour Class Action Experience...... 6

        C.      The Settlement is Fair, Adequate, and Reasonable............................ 7

                1.      The Settlement is Fair and Reasonable Given
                        Maximum Potential Recovery and Accompanying
                        Risks of Continued Litigation.................................... 7

                2.      Costs and Risks of Continued Litigation ................................. 10

                3.      Non-Admission of Liability by Defendant ............................. 12

                4.      The Settlement is Within the Range of Reasonableness ........ 12

                5.      The PAGA Settlement Is Properly Before the State Court .... 14

V.      THE PROPOSED CLASS NOTICE MEETS THE REQUIREMENTS
        OF RULE 23 AND DUE PROCESS ........................................................ 15

VI.     THE REQUESTED ENHANCEMENT IS REASONABLE .................... 16

1

## <u>TABLE OF CONTENTS (cont'd)</u>

VII.    THE REQUESTED FEE IS REASONABLE ............................................. 20

VIII.   CONCLUSION ............................................................................... 20

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2

# <u>TABLE OF AUTHORITIES</u>

3

**Page**

4

**Federal Cases**

*Bogosian v. Gulf Oil Corp.*,
    621 F. Supp. 27 (E.D. PA 1985) .................................................................. 16, 17

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979) ...................................................................... 7

*Caudle v. Sprint/United Mgmt Co.*,
    No. C 17-06874 WHA, 2019 WL 2716291 (N.D. Cal. Jun. 28, 2019) ............... 9

*Ching v. Siemens Industry, Inc.*,
    2013 WL 6200190 (N.D. Cal. Nov. 27, 2013) ..................................................... 5

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .............................................................................. 6

*Clemens v. Hair Club for Men, LLC*,
    No. C 15-01431 WHA, 2016 WL 3442774 (N.D. Cal. June 23, 2016) .............. 14

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ............................................................................ 17

*Dunn & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ...................................................................... 17

*Eddings v. Health Net, Inc.*,
    2013 WL 169895 (C.D. Cal. Jan. 16, 2013) ...................................................... 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................... 15

*Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*,
    137 F.R.D. 240 (S.D. Ohio 1991) ...................................................................... 13

*Evans v. Jeff D.*,
    475 U.S. 717 (1986) ............................................................................................. 6

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ........................................................................... 7, 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................................. 6

*In re General Motors Corp.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................... 7

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .............................................................................. 5

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# <u>TABLE OF AUTHORITIES (cont'd)</u>

*In re Tableware Antitrust Litig.*,
  484 F.Supp.2d 1078 (N.D. Cal. 2007) .................................................. 5

*Karl v. Zimmer Biomet Holdings, Inc.*,
  No. C 18-04176 WHA , 2021 WL 2987119 (N. D. Cal. July 15, 2021) ...... 13, 14

*Ma v. Covidien Holding, Inc.*,
  2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ...................................... 4

*Molski v. Gleich*,
  318 F.3d 937 (9th Cir. 2003) ................................................... 5

*Morris v. Fidelity Investments, FMR LLC*,
  No. C 17-06027 WHA, 2019 WL 4040069 (N. D. Cal. Aug. 26, 2019) ........... 14

*National Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .............................................. 11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) ................................................. 5

*Roberts v. Texaco*,
  979 F. Supp. 185, 201 (S.D.N.Y. 1997) ....................................... 17

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................ 6

*Ross v. Trex Co., Inc.*,
  2009 WL 2365865 (N.D.Cal. July 30, 2009) .................................... 5

*Saechao v. Landrys, Inc.*,
  No. C 15-00815 WHA, 2016 WL 3227180 (N.D. Cal. June 11, 2016) ............. 15

*Stanton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................. 4, 5

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ........................................... 17

*Wright v. Linkus Enter., Inc.*,
  259 F.R.D. 468 (E.D. Cal. 2009) ............................................. 15

*Young v. Katz*,
  447 F.2d 431 (5th Cir. 1971) ................................................ 10

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Parties have reached a proposed settlement that, if approved by the Court, will fully resolve this action. Plaintiff Casey Troyer ("Plaintiff"), on behalf of himself and the Class, moves this Court for an order: (1) preliminarily approving the proposed Joint Stipulation of Settlement and Release ("Settlement Agreement" or "Settlement"); (2) approving the proposed notice plan and directing distribution of the proposed class notice (attached as **Exhibit 1** to the proposed Settlement Agreement); and (3) setting a schedule for final approval.

The Class is the same Class as certified by the Court in its Order Re Motion To Certify Class (DE 67) and Order Amending Class Certification Order By Extending Class Period And Vacating Hearing On Motion To Amend (DE 84). The Class is defined as: delivery driver hacedores like plaintiff classified as exempt from overtime under California's outside salesperson exemption from April 6, 2016 to April 11, 2021.

The proposed settlement is for the gross sum of $2,470,000.00 (plus Defendants' share of payroll tax), which represents the total amount payable in this settlement by Defendants, and includes without limitation the Settlement Administration Costs, attorneys' fees, litigation costs, and the Class Representative Enhancement Payment. The Gross Settlement Amount is exclusive of the employer's share of payroll taxes. (Settlement ¶ 2.20.)

As discussed in further detail below, the terms of the proposed settlement are fair and are the product of serious, arm's-length negotiation. Plaintiff respectfully requests that the Court preliminarily approve the Settlement Agreement and the class action and representative action settlement it embodies, direct notice to the class, and schedule a final approval hearing.

## II.   SUMMARY OF THE LITIGATION

### A.   **Pleadings**

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff was formerly employed by Defendants The Yerba Mate Co., LLC and Guayaki Sustainable Rainforest Products, Inc. ("Defendants") as a delivery driver hacedor. He commenced the instant action in the California Superior Court for the County of Alameda on July 21, 2020. Defendant removed the action to the District Court for the Northern District of California on August 28, 2020. (DE 1.)

On June 29, 2021 this Court entered its Order Re Motion To Certify Class (DE 67), granting certification.

On August 18, 2021, this Court entered its Order Amending Class Certification Order By Extending Class Period And Vacating Hearing On Motion To Amend (DE 84).

On August 19, 2021, this Court modified the notice and distribution plan (DE 86).

On September 3, 2021, Phoenix Settlement Administrators managed the class notice distribution plan. (Yoon Decl. ¶ 8.) The Parties used Phoenix for the Class Notice because they performed the pre-certification privacy opt-out letter, which was part of the discovery process. Based on the prior experience in both these projects, the Parties decided to continue to use the same administrator for purposes of continuity and experience with this specific class list(s). (Yoon Decl. ¶ 23.) Phoenix was selected for the privacy mailing early in this litigation based on a blind bid process. (*Id.* at ¶ 24.)

## B. <u>Discovery and Investigation</u>

The Parties have been engaged in extensive discovery up to and through the class certification motion filings. Discovery has continued through to the present time as the Parties are currently preparing for the November 19, 2021 expert witness disclosure deadline, fact discovery and the discovery related to the Court's discovery ruling (DE 101).

The Parties are preparing for trial and the discovery completed thus far is nearly (if not more than) the discovery necessary to try this action.

C.  **Settlement**

The Parties read and reviewed the Court's Order re: class action (DE 14). In compliance with that rule, the Parties did not discuss settlement at all until after certification was granted. (Yoon Decl. ¶ 5.)

Post certification, the Parties participated in a settlement conference with Judge Ryu on July 6, 2021. The Parties then participated in a mediation with Steve Serratore on October 25, 2021. The Parties then participated in a second settlement conference with Judge Ryu on November 8, 2021. (Yoon Decl. ¶ 6.)

The Parties have since executed a formal Settlement Agreement. (Yoon Declaration ¶ 6, Exhibit A.)[1]

III.  **SUMMARY OF SETTLEMENT**

The Settlement Agreement, attached to the Declaration of Kenneth H. Yoon as **Exhibit A**, provides for $2,470,000.00 as the Gross Settlement Amount. (Settlement ¶ 2.20.) This settlement will be automatically disbursed without the need for claim forms, and with no reversion to the Defendant.  (Settlement ¶ 6.9) Unclaimed payments will be given to Legal Aid at Work as a *cy pres* beneficiary for uncashed settlement checks. (Settlement ¶ 6.9.4.) The Parties and Counsel have no relationship to the proposed beneficiary. (*Id.*)

The Net Settlement Amount is the balance of the Gross Settlement Amount after the following are deducted:

- Attorneys' fees. Class Counsel intend to see an amount up to $617,500 (25% of the Gross Settlement Amount) (Settlement ¶ 6.5);
- Actual litigation costs advanced by Class Counsel not to exceed $150,000 (*Id*);

---

[1]  As part of the settlement negotiations, the Parties also entered into a settlement agreement that resolves a case between the parties for penalties under the California Private Attorneys General Act. (Yoon Decl. ¶ 7.) That agreement is attached as Exhibit B to the Declaration of Kenneth H. Yoon.

- Settlement Administration Costs estimated to be in the amount of $11,000, which will be paid from the Gross Settlement Amount (Yoon Decl. ¶ 23); and

- Enhancement Payment for the Class Representative. Plaintiff intends to seek up to $10,000 for the Enhancement Payment to Plaintiff (Settlement ¶ 6.6.1).

The Class Period is defined as April 6, 2016 to April 11, 2021. (Settlement ¶ 2.8.) The Class is estimated to have approximately 407 members.  (Settlement ¶ 2.7.)

The Net Settlement Amount will be paid out to all Settlement Class members who do not exclude themselves from the Class as part of the notice and opportunity to opt-out process. (Settlement ¶ 6.8.2.)

Each Participating Class Member's Individual Settlement Payment shall be determined based on the number of Workweeks that the Class Member was a member of the Class during the Class Period divided by the total number of Workweeks that every Class Member was a member of the Class during the Class Period multiplied by the Net Settlement Amount. (Settlement at ¶ 6.8.1.) The allocation awards a greater share to those people who worked a greater part of the Class Period.

## IV.   PRELIMINARY APPROVAL IS WARRANTED

### A.   <u>Legal Standard</u>

A proposed settlement under Federal Rule of Civil Procedure 23(e) must be "fundamentally fair, adequate, and reasonable."  *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  Pursuant to Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  The purpose of Rule 23(e) is "to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Ma v. Covidien Holding, Inc.*, 2014 WL 360196 at *3 (C.D. Cal. Jan. 31, 2014)

(quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008)).

To determine the preliminary fairness of an agreement, the Court balances "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; [and] the presence of a governmental participant." *Stanton*, 327 F.3d at 959, quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); see also *Ching v. Siemens Industry, Inc.*, 2013 WL 6200190 at *6-7 (N.D. Cal. Nov. 27, 2013) (applying these factors to a preliminary approval of class settlement).  Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007)). The question for preliminary approval of a settlement is whether it is "within the range of reasonableness." *Ross v. Trex Co., Inc.*, 2009 WL 2365865 at *3 (N.D.Cal. July 30, 2009).

The initial determination to approve or reject a proposed settlement is "committed to the sound discretion of the trial judge." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  The Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Justice*, 688 F.2d at 625).  In evaluating a settlement agreement, it is not the Court's role to second-guess the agreement's terms. *Officers for Justice*, 688 F.2d at 625. "Rule 23(e) wisely requires court approval of the terms of any settlement of a

class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("Neither the district court nor this court ha[s] the ability to delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety."). In general, there is a strong judicial policy favoring class settlements. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### B.   The Settlement Meets the Standards for Preliminary Approval

#### 1.   Arms'-Length Negotiations

The Settlement before the Court was reached through arms'-length bargaining. Each side was represented by reputable attorneys, experienced in wage-and-hour law and class action litigation. Each side prepared their case based on the extensive discovery exchanged between the parties and their own independent investigations. (*See* Yoon Decl. ¶ 28.)

#### 2.   Sufficient Investigation and Discovery

As detailed above and in the Yoon Declaration (¶¶ 2-5), the Parties agreed to settle this action only after extensive litigation (which necessarily includes discovery and investigation) including essentially sufficient discovery to prepare this case for a class action trial.

The next point for settlement discussions would be at trial.

#### 3.   Class Counsel's Wage-and-Hour Class Action Experience

Here, counsel for both Plaintiff and Defendants have a great deal of experience in wage-and-hour class action litigation. Plaintiff's counsel have significant and reputable histories of litigating complex cases, including wage-and-hour class actions and representative actions, such as the present case, as was discussed in the Motion for Class Certification.

Plaintiff's counsel have tried a class action to verdict in federal court, are

fully aware of the risks of trial, and have factored not only the risks of trial but the foregone benefits of trial. (Yoon Decl. ISO Mot. Class Cert. ¶ 6, DE 49-1.)

This was a contentious and litigation-intensive case where Plaintiff certified this Case, retained experts for trial, and was preparing the last portions of discovery prior to commencing trial preparation.

Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current settlement is fair, reasonable, and adequate. In sum, there should be a presumption of fairness because the factors establishing such a presumption are satisfied. (Yoon Decl. ¶ 29.)

## C.   <u>The Settlement is Fair, Adequate, and Reasonable</u>

The Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk of trial and appeals, the risks in an area where the law is constantly changing, and the costs of pursuing such litigation.  The Settlement here is within a range of reasonableness allowing for preliminary approval. Applying the rest of the factors here, the Settlement for each participating Class Member is fair, reasonable and adequate, given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

### 1.   **The Settlement is Fair and Reasonable Given Maximum Potential Recovery and Accompanying Risks of Continued Litigation**

To assess the fairness, adequacy and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *see also Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

Plaintiff's claim rests upon a central issue of challenging Defendant's policy to classify its delivery driver hacedors as outside salespersons exempt from overtime. If a jury finds against Defendants' outside salesperson exemption defense, then essentially Plaintiff and the Class would then win.

What Plaintiff and the Class would win would then be decided by the jury. Plaintiff's class claim for overtime wages and meal and rest break premium wages is premised on the fact that due to the exemption, the Class was denied overtime and denied compliant meal and rest breaks.

Derivative of these wage claims are the penalty claims. (Cal. Labor Code §§ 203 and 226.)

Based upon Plaintiff's analysis of the records, including expert analysis, the high end value of this case is based upon 5 hours of overtime each week. Plaintiff estimates he can prove damages of approximately $2,900,000. This evidence would be in the form of the two experts, the data expert Dr. Kriegler and the questionnaire expert Dr. Roberts. (Yoon Decl. ¶ 9.)

Plaintiff's claim for meal and rest break premiums is based on every week of work class members are owed one meal premium and one rest premium (for a total of two hours of pay for each day worked). This is based on Plaintiff's theory that Defendants relied on their outside salesperson exemption and had no written policies on meal or rest breaks for the Class. Plaintiff estimated damages for this claim to be $3,200,000. (Yoon Decl. ¶ 9.)

Assuming Plaintiff's prevail on the overtime claims, both as to liability and a finding of damages, Plaintiff estimates waiting time penalties for every terminated employee at $950,000. (Yoon Decl. ¶ 9.)

Assuming Plaintiff's prevail on the overtime claims, both as to liability and a finding of damages, Plaintiff estimates recordkeeping penalties for every employee at $650,000. (Yoon Decl. ¶ 9.)

However, Plaintiff understands that Defendants not only challenge the

availability of these damages (by way of their outside salesperson defense), but the amount of damages as well. Defendants are in the best position to explain their contentions, but the summary is that Defendant believes they have evidence that if a jury is to determine overtime, it should be far less than 5 hours a week, but rather 1 hour per week. Next, Defendants' claim that even if they misclassified their hacedores as exempt, they still had procedures and practices that permitted Class Members to take meal and rest breaks, and that due to these procedures and practices they could present evidence to a jury that would support a finding of zero meal and zero rest break premiums by the Class because they were provided and any breaks that were not taken were voluntarily waived.

There are thus two risks at trial weighing on the potential recovery: (1) whether Plaintiff defeats Defendants' outside salesperson defense, and (2) whether Plaintiff carries his burden of persuasion that Defendants' owe the maximum amount of meal and rest premium pay.

Although Plaintiff is confident he should win at trial, Plaintiff and Class Counsel do not know the risk profile of every class member. Acting with the Class's best interest, this is a fair settlement. Whether Defendants or Plaintiff prevails on the key issue of this case is perhaps a 50/50 question.

If Plaintiff prevails on that threshold issue, the next issue is estimating a potential recovery based on a jury's value of the overtime and break claims. On the overtime claim, the value is something between $500,000 and $0 (Defendant's estimate of how low they can persuade a jury) and $2.4 million (Plaintiff's estimate of how high he can persuade a jury). Taking Defendant's less optimistic scenario, the average is $1.45 million. On the meal and rest break claim, the value is between $560,000 and $0 (Defendant's estimate) and $3.2 million (Plaintiff's estimate). Again, taking the less optimistic defense scenario, the average between the Parties' is $1.6 million.

On the derivative claims, the value is based on winning or losing, there is

no real basis for a court to award less than the full amount if liability is found against Defendants. That said, Defendants do have a good faith defense to each of those claims. *See Caudle v. Sprint/United Mgmt Co.*, No. C 17-06874 WHA, 2019 WL 2716291 (N.D. Cal. Jun. 28, 2019).

The total value of the potential recovery in terms of the wages and penalties available in this case is thus between $7,700,000 and $1,340,000 (or $0), factoring in the risk that Defendants might persuade a jury as to the Defendants' view of the wage damages. (Yoon Decl. ¶ 9.)

Applying a risk discount to Plaintiff's ability to prove to the trier of fact the full damages figure, and a risk discount to prevailing on the threshold issue of this case, this settlement provides fair value to the Class.

For the below further reasons, this settlement should be approved. At least, the Class should be given an opportunity to opine on the merits of the settlement.

## 2.    Costs and Risks of Continued Litigation

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157.  In applying this factor, the Court must weigh the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement provides fair and prompt relief to all Class Members in lieu of lengthy continued litigation.  The next step in this case is a class action trial, estimated to take several days. At trial, there exists the regular risk that the Trier of Fact will find against the Class or will find for the Class but award little in damages.

If for example, a jury found in favor of the Class on the meal and rest break claim, but against the Class on overtime (a split verdict that Class Counsel has experienced), then the availability of penalty damages under Labor Code sections

226 and 203 may be in serious doubt (or unavailable as a matter of law, depending on who is asked). This also impacts the Class's ability to seek attorneys' fees as California law does not provide fee shifting for meal and rest break claims.

Further, after a decision favoring the Class, Defendants would have the right to appeal. Given the realities of appellate practice, this process places ultimate relief several years away. In another case, Class Counsel is presently waiting for a 9th Circuit appeal to be decided from a verdict received in April 2019 (and will expect another delay for expected *en banc* review and *certiorari* process). An immediate and substantial recovery now, versus a years-long appeal process regarding various potential issues, is a significant factor to be considered. *See National Rural Telecomms. Coop. v. DIRECTV, Inc.*, Nos. CV 99–5666 LGB(CWX), CV 00–2117 LGB(CWX), 221 F.R.D. 523, 526-27 (C.D. Cal. 2004) (Baird, J.) ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

If this were an individual action, Mr. Troyer and his counsel could make decisions based solely on his financial condition/wherewithal. But this is a class action. However, there are some reasonable assumptions that should be made. The Class comprises of employees who made annual salaries typically between $30-40,000. Because of the this, the average recovery in this settlement will make an immediate difference for many of those within the Class. Taking an estimated Net Settlement Sum and dividing it between 407 Class Members, the average is over $4,000. This is a real benefit for Class Members, keeping in mind the average tenure of a Class Member is about 10 months. As this case is in federal court, the post-judgment interest rate that the Class would receive is essentially zero (around 0.14%). The unfair reality facing judgment creditors in federal court is every corporation (or person) would gladly pay the one-year Treasury rate for an unlimited amount of money for any amount of time. Again, the class is working-

class persons, for whom credit card debt and credit card interest rates are normal. The present value of any recovery given typical interest rates persons in the Class are probably paying as compared with the post-judgment federal interest rate makes this factor more strongly favor recovery now. It could be different if this were a high-wage earning class – though high wage earners maintain high credit card debt at high interest rates just like lower wage earners.

### 3.   Non-Admission of Liability by Defendants

Plaintiff understands that Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit, and further denies that, for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. Defendants maintain, among other things, that they have complied at all times with California wage and hour laws. This denial increases the likelihood of protracted litigation.

### 4.   The Settlement is Within the Range of Reasonableness

The reasonable high-end exposure estimated by Plaintiff is $7.7 million. The Gross Settlement Amount therefore represents approximately 32% of the maximum potential loss. Plaintiff respectfully submits this is well within the range of reasonableness. *See, e.g.*, William B. Rubenstein et al., *Newberg on Class Actions* § 13:15 (5th ed. 2016) (the range of reasonableness percentage could be as low as 1/100th or 1/1000th of 1%); *Ma*, 2014 WL 360196 at *5 (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC*, 2014 WL 3610945, at **5** (N.D. Cal. July 21, 2014) (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial); *Glass v. UBS Fin. Servs., Inc.,* 2007 WL 221862, at *9 (N.D. Cal. Jan. 26, 2007) aff'd, 331 Fed. Appx. 452 (9th Cir. 2009) (approving a settlement of an action claiming unpaid overtime wages where the settlement amount constituted approximately 25% to 35% of the estimated actual loss to the class); *Sullivan v.*

*DB Investments, Inc.*, 667 F.3d 273, 325 (3rd Cir. 2011) (there appears to be "no authority that requires a district court to assess the fairness of a settlement in light of the potential for trebled damages."). Further, in light of Defendant's denial of liability, the Court should discount the total value of the claims to account for the risks and costs of continued litigation.

In Class Counsel's most recent class action settlement of a wage and hour case in federal court, Class Counsel obtained a gross settlement of $5 million for a class of approximately 11,500 persons. The estimated maximum potential recovery in that case was $36.5 million, making the settlement approximately 13.7% of the potential recovery. The average gross recovery in that case was over $400, as compared to this case where the average gross recovery is over $6,000. In that case, the notice was mailed to each class member notice, and the cost of administration was $45,750. There was no cy pres as unclaimed funds went to the California State Controller. The court awarded $1,360,857.50 as attorneys' fees, and $56,585.96 as costs. (Yoon Decl. ¶ 26.)

An illustrative case is *Karl v. Zimmer Biomet Holdings, Inc.*, where the court noted:

> …the proposed settlement addresses the primary monetary and equitable goals of this suit. The proposed settlement provides for a non-revisionary gross settlement common fund of $7,380,482.10 to distribute to the 246 settlement class members on a pro-rata basis based upon bi-weekly service pay periods (of which there were approximately 21,956). Breaking it down, this provides approximately $336 per bi-weekly pay period or $672 per month. Karl contends the settlement represents approximately 15.31% of Zimmer's total exposure in this suit — estimated at $48,196,516.

No. C 18-04176 WHA, 2021 WL 2987119, at *2 (N.D. Cal. July 15, 2021). The court further compared that settlement to another, citing *Tsyn v. Wells Fargo*, No. C 14-02552 LB (N.D. Cal.), Dkt. Nos. 159, 165-10, 172. The court in Karl mentioned: "In *Tsyn*, the approved settlement awarded approximately $44.76 per

work month, less fees and costs. Here, assuming full attorney's fees are approved, the settlement award breaks out to $473.02 per work month, less fees and costs." *Id.* at *2.

Here, the estimated Net Settlement Sum is possibly $1,681,500, based on the Court approving the maximum allowed for each deduction. There are 18,000 workweeks (Yoon Decl. ¶ 14.) This is means before payroll tax, each workweek is approximately $93. That is much more than $44.76 in *Tsyn*. Of course, the primary reference point is the value of the case, but these two cases provide some context that can help the Court determine that this case is within the range of reasonableness.

### 5.    The PAGA Settlement Is Properly Before the State Court

As mentioned above, this Settlement resolves the case presently before this Court. There is a separate case before the Alameda County Superior Court, presently stayed, on Mr. Troyer's claim under the California Private Attorneys General Act. That Settlement is described in Exhibit A to the Yoon Declaration.

That settlement is contingent upon this Settlement being issued an order of final approval. (Exhibit B to Yoon Decl. at § 4(K)(2).) Whether Alameda County Superior Court grants approval of that settlement is a question within that court's jurisdiction. However, that said, the allocation of $130,000 to the release of the California Private Attorneys General Act is no uncommon in relation to the facts of this case. In other words, $130,000 is about 5% of the Gross Settlement Sum. This Court has approved settlements where the amount allocated to PAGA is in that range. *See e.g., Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA , 2021 WL 2987119, at *2 (N. D. Cal. July 15, 2021) (1.5%); *Morris v. Fidelity Investments, FMR LLC*, No. C 17-06027 WHA, 2019 WL 4040069, at *2 (N. D. Cal. Aug. 26, 2019) (1.25%); *Caudle v. Sprint/United Mgmt. Co.*, No. C 17-06874 WHA, 2019 WL 2716291 (N.D. Cal. June 28, 2019) (7.5%); *Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 3442774, at * 1 (N.D. Cal.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

June 23, 2016) (1%); *Saechao v. Landrys, Inc.*, No. C 15-00815 WHA, 2016 WL 3227180, at *2 (N.D. Cal. June 11, 2016) (2.4%).

## V. THE PROPOSED CLASS NOTICE MEETS THE REQUIREMENTS OF DUE PROCESS

The proposed notice (Exhibit 2 to the Settlement Agreement) complies with due process and Rule 23. Under Rule 23(e), the court "must direct notice in a reasonable manner to all class members who would be bound by the propos[ed settlement]." Fed.R.Civ.P. 23(e)(1). Class members are entitled to receive "the best notice practicable under the circumstances." *Wright v. Linkus Enter., Inc.*, 259 F.R.D. 468, 475 (E.D. Cal. 2009), quoting Fed.R.Civ.P. 23(c)(2). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004), quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980). In addition, notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *see also Eddings v. Health Net, Inc.*, 2013 WL 169895 at *6 (C.D. Cal. Jan. 16, 2013) (finding that the parties' plan for notice by first-class mail met the "best practicable notice" standard where the settlement administrator would take steps such as database searches to ensure that class members' addresses were current and would re-mail returned notices).

The Settlement provides that the Settlement Administrator will send by first class mail a copy of the court-approved notice to all Class Members. (Settlement ¶ 6.2.3.) Class Members will have sixty (60) days from the date of the initial mailing to object or request exclusion. (Settlement ¶ 2.13.) There is no requirement to file a claim to be paid; the administration of the settlement payments to Class Members is an automatic process. (Settlement at ¶ 6.8.2.) The Class Notice provides Class Members with information as to how they may be paid for their respective proportionate shares of the Net Settlement Amount.

(Settlement Ex. 2.)  In the event a Notice Packet is returned undeliverable, the Settlement Administrator will make reasonable efforts to obtain a valid mailing address by using the social security number of the class member and standard skip tracing devices to conduct a search for a correct mailing address.  (Settlement ¶ 6.2.4.)

The Class Notice provides the Class everything they need to know in order to make an informed decision. It provides an explanation of the proposed Settlement and procedures on how to object and appear. The documentation provides a brief explanation of the case, the exclusion date and procedure for exclusion, the attorney's fees to be paid and the individual members' estimated recovery under the Settlement net of expenses, which are all included in the Notice Packet. It also states that those who do not opt out will be bound by the Settlement. (Settlement Ex. 2.) Additionally, the settlement release is no broader than the certified claims. The notice will give Class Members the opportunity to evaluate the settlement release and choose to either participate in or opt-out of the action.

The estimated sum for Settlement Administration Costs is $11,000.00. (Yoon Decl. ¶ 23.)

## VI.   THE REQUESTED ENHANCEMENT IS REASONABLE

Plaintiff intends to seek at final approval an enhancement of up to $10,000.00. Plaintiff has identified this amount in the Class Notice, which Plaintiff requests this Court approve the mailing.

It is appropriate to provide a payment to class representatives for their services to the class. *Van Vraken v. Atlantic Richfield Co.,* 901 F.Supp. 294, 299 (N.D. Cal. 1995); *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 614 (C.D. Cal. 2005) ("Proceeding by means of a class action avoids subjecting each employee to the risks associated with challenging an employer"); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 32 (E.D. Pa. 1985). Incentive awards for representative

plaintiffs are both proper and routine.  For example, in *Enterprise Energy Corp. v. Columbia Gas Transp. Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991), each representative plaintiff was granted a $50,000.00 incentive award.  Also, the class representatives in In re *Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 377 (S.D. Ohio 1990), received incentive awards ranging from $35,000.00 to $55,000.00.  Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate to induce individuals to step forward and assume the burdens and obligations of representing the class.  In deciding the amount of an enhancement award for a class representative, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions and the amount of time and effort the plaintiff expended in pursuing the litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. PA 1985).

Particularly in employment class actions, such as discrimination or wage claims, named plaintiffs should be entitled to an enhancement award as an incentive to take the risks associated with pursuing employment claims on behalf of other employees.  An award is justified where the plaintiff is a "present or past employee whose present position or employment credentials or recommendation may be at risk by reason of having prosecuted the suit, who therefore lends his or her name and efforts to the prosecution of litigation at some personal peril." *Roberts v. Texaco*, 979 F. Supp. 185, 201 (S.D.N.Y 1997).

The amount sought by Plaintiff is warranted in this case. Mr. Troyer was actively involved in this case during the entire litigation. He discussed this case with counsel on several occasions pre-filing, as part of regular updates on the case, to prepare for deposition, and to prepare for settlement conferences and mediation. Mr. Tryoer spent time searching for documents, , preparing and

appearing for deposition and understanding the various issues for settlement. (Yoon Decl. ¶ 15.)

In particular, Mr. Troyer has spent many hours with counsel going over voluminous discovery responses. Also, in order to comply with this Court's specific discovery procedures, Mr. Troyer spent more than the typical time to ensure that answers were full and correct to the standards expected of this Court. For example, Mr. Troyer spent many hours reviewing thousands of text messages obtained by a data dump from his cell phone. This text message data was specific to this case; these thousands of text messages were between Plaintiff and his managers/co-workers on Mr. Troyer's phone – not text messages between him and non-witnesses. Mr. Troyer reviewed these (and other phone records that were possibly work related) for purposes of privacy and to explain the context of all the conversations to counsel. He also reviewed this information for purposes of preparing for his deposition. These messages were not limited to text; many texts involved photos and document images. (Yoon Decl. ¶ 16.)

Mr. Troyer has reviewed the deposition testimony of Defendant's PMK witnesses, and some of Defendants' discovery responses. Mr. Troyer has also reviewed each of the Court's rulings. Mr. Troyer has regularly taken advantage of the public access available on PACER and has reviewed PACER regularly, at his own expense. (Yoon Decl. ¶ 17.)

Mr. Troyer has a claim under Penal Code § 632 for unlawful audio recording, which carries with it a $2,500 penalty. In my limited experience at trial, involving a similar situation where the Court did not certify all the claims sought to be certified for trial, the parties settled the individual claims that were not certified in order to focus the trial on the certified claims. The claims settled for a relatively substantial amount, likely due to the cost involved to litigate the claims on an individual basis. (Yoon Decl. ¶ 18.)

Although plaintiffs who volunteer to take the responsibility of class

representative would also have to do the same work in an individual case, individual cases settle (or are tried) on a totally different level of intensity that class actions. If Mr. Troyer were to have sued individually, there is a strong likelihood his claim would never have been removed the federal court, that he would never have been deposed, that discovery involving his personal cell phone would not have been performed (the cost of using an expert to perform cell phone data retrieval is not the same level of justifiable in an individual case as it is in a class action), and ultimately, that his case would have resolved (resulting in payment) much sooner than approximately 2 years from filing. (Yoon Decl. ¶ 19.)

These are all burdens that Mr. Troyer has willingly incurred because he believes in the work be is doing is an important duty for the benefit of the Class. Specifically, in his interactions with co-workers, he knows that many people who know their rights are being violated do not feel the ability to take action to protect those rights, for fear of losing their jobs. Mr. Troyer understands that his filing of a putative class action served to benefit his co-workers, and if this settlement is approved, Mr. Troyer believes it will benefit many people who otherwise believe they could not take action on their own. (Yoon Decl. ¶ 20.)

Again, if this case were filed individually, and if it went to trial, the commitment to trial would likely be a markedly different level of intensity. The amount of scrutiny Mr. Troyer could expect in trial is likely to be a far lower level if he testified individually, rather than as a class representative. The investigation into class representatives for a class action is of a completely different level than into an individual suing for his own wages (and privacy violation). (Yoon Decl. ¶ 21.)

Mr. Troyer will provide his own declaration as part of his anticipated motion for an enhancement. He understands the Court's guidelines and expectations regarding incentive payments. The requested amount will be supported with a detailed declaration as to the reasons for the award. (Yoon Decl.

¶ 22.)

## VII.   THE REQUESTED FEE IS REASONABLE

Simply to provide some assurance to the Court that the fee that will be requested of $617,500 is within a range of reasonableness, Plaintiff notes that there is no clear-sailing provision in the Settlement and that the anticipated requested fee is less than the anticipated lodestar calculation. (Yoon Decl. ¶ 27.)

In light of this, Class Counsel request that the Court permit notice to go to the Class as drafted, with the anticipated 25% of the Gross Settlement Amount fee request.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting preliminary approval of this class action settlement.

Dated: November 8, 2021                    YOON LAW, APC


_____*/s/ Kenneth H. Yoon*_____
Kenneth H. Yoon
Attorneys for Plaintiff Casey Troyer

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT